IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARANTO MCKIVER, | ) |
| | ) |
|     Plaintiff, | )    Case No. 7:23-cv-00548 |
| | ) |
| v. | )    **MEMORANDUM OPINION** |
| | ) |
| JACOB M. IRELAND, *et al.* | )    By:   Hon. Thomas T. Cullen |
| | )           United States District Judge |
|     Defendants. | ) |

This matter is before the court on Plaintiff Maranto McKiver's motion to proceed *in forma pauperis* ("IFP"). (ECF No. 2.) While the court finds that McKiver qualifies to proceed without prepaying fees or costs and will grant his motion, it will dismiss many of his claims based on its duty to screen IFP complaints. *See* 28 U.S.C. § 1915(e)(2)(B). Accordingly, his complaint will be conscribed as described below.

## I.   BACKGROUND

The following facts are taken from McKiver's complaint and, at this stage, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This lawsuit emerges from two of McKiver's self-described severe mental health crises. On December 20, 2022, McKiver says he called for a Roanoke City ambulance to take him to the hospital; he was subsequently dropped off at LewisGale Medical Center ("LewisGale").[1] (Compl. ¶¶ 1–2 [ECF No. 1].) McKiver was assessed by hospital staff and was told to wait in the lobby. (*Id.* ¶ 3.) While in the lobby, he confronted another person who supposedly stated

---

[1] The complaint lists this as "Lewis-Gale Hospital," but the address provided corresponds with LewisGale Medical Center in Salem, Virginia.

that McKiver harmed his child. (*Id.* ¶¶ 4–5.) McKiver then claims that he heard "nursing staff yell 'get McKiver the 'f' outta here!'," which caused him to fear for his safety, so he left. (*Id.* ¶¶ 6–7.)

Two days later, McKiver requested a police check for another alleged mental health crisis. When an unnamed officer ("Officer Jane Doe") responded to the call, McKiver asked her to take him to the hospital because, he said, he "was going through a mental health crisis." (*Id.* ¶ 10.) She declined to do so and left. (*Id.*) McKiver again called 911 for help and spoke to the operator. (*Id.* ¶¶ 11–13.) He described the poor state of his mental health, to which the dispatch operator said, "they have a custom of dumping things like this on us," leading McKiver to believe he "was not being taken seriously." (*Id.* ¶ 13.) Still, Officer Jacob M. Ireland ("Officer Ireland") responded to McKiver's call and, when he arrived, McKiver "begged for help" and "plead[ed] to be taken to a hospital." (*Id.* ¶¶ 15, 18.) McKiver told Officer Ireland that "he had cultural influences in his system." (*Id.* at 17.) Officer Ireland then drove McKiver to LewisGale, escorted him in, and turned him over to hospital staff. (*Id.* ¶¶ 18–22.)

Once he was in a room with Officer Ireland and three members of LewisGale's staff, McKiver explained his condition and why he was in dire need of help. (*Id.* ¶ 21.) Following their instructions, he emptied his pockets, revealing a knife that Officer Ireland turned over to LewisGale security. (*Id.* ¶ 22.) Officer Ireland then left the hospital. (*Id.* ¶ 23.)

Two nurses, Alexis Lawson and Sara Burtner, examined McKiver. (*Id.* ¶ 24.) At one point, Lawson allegedly became upset, left the room, and agitated McKiver by making loud noises in a nearby room. (*Id.*) McKiver claims he was then left unattended in a hallway while nurses laughed at him, before Burtner eventually told him to wait in a room by himself. (*Id.* ¶¶

27–28.) While waiting in that room, McKiver heard someone—who he believes is a doctor—say, "I want McKiver dead for what he did." (*Id.* ¶¶ 29–30.) Upon hearing this, McKiver left the room to look for security. He then heard someone yell "[T]here he go[,] get em," and saw a man approach him with what he perceived as a weapon. (*Id.* ¶¶ 32–35.) "[A] fight ensued," but deescalated once McKiver learned the perceived weapon was a phone. (*Id.* ¶¶ 35–36.) Security, including John Lewis, ordered McKiver to leave LewisGale with guns drawn and pointed at him. (*Id.* at 19, ¶¶ 39–40.) For the next two hours, McKiver ran around LewisGale's grounds, spraying two fire extinguishers "in a mental state of insanity," while doctors—including Dr. Chad W. Mosby—purportedly manipulated his hospital records to show that he had eloped from the hospital. (*Id.* ¶¶ 43–44, 48.) McKiver was arrested following this incident; he is currently awaiting trial on robbery and other charges. (*Id.* ¶ 51.)

On August 14, 2023, McKiver filed the instant lawsuit under 42 U.S.C. § 1983, bringing numerous claims based on his belief that he did not receive sufficient help during his mental health crises. His complaint comprises a narrative of events (*id.* at 7–15), followed by a long list of potential federal and state claims against each Defendant (*id.* at 16–31). Specifically, he brings claims against Officer Jane Doe; Officer Ireland; Roanoke County; the Roanoke County Police Department Chief, Michael Poindexter (collectively, "Law Enforcement Defendants"); as well as LewisGale/HCA Inc.;[2] Doctor Chad W. Mosby; Nurses Sara Burtner and Alexis Lawson; and Security Guard John Lewis (collectively, "Hospital Defendants" and, together

---

[2] Apart from listing HCA Inc. alongside LewisGale as a Defendant, McKiver alleges no wrongdoing from that entity, so his claims will be dismissed as to HCA Inc.

- 3 -

with Law Enforcement Defendants, "Defendants"). For the alleged wrongs, McKiver seeks punitive and compensatory damages.[3] (*Id.* at 32.)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e), which governs *in forma pauperis* proceedings, the court has a duty to screen initial filings. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656–57 (4th Cir. 2006). "Dismissals on [28 U.S.C. § 1915] grounds are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). In this screening role, the court must dismiss any action that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Ewing v. Silvious*, 481 F. App'x 802, 803 (4th Cir. 2012) (noting the district court's screening properly dismissed several claims but erred in dismissing one properly pleaded claim); *Keitz v. Unnamed Sponsors of Cocaine Rsch. Study*, 510 F App'x 254, 256 (4th Cir. 2013) (same).

The standards for reviewing a complaint for dismissal under Section 1915(e)(2)(B)(ii) are the same as those that apply when a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(6). *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). Therefore, in

---

[3] The court construes McKiver's complaint as only seeking money damages. Insofar as he may have initially indicated that he was also requesting injunctive relief (by selecting a box on the court's form Section 1983 complaint), he appears to have abandoned that request (by scratching out the selection). (*See* Compl. at 32.) The court's construction is bolstered by the fact that he did not specify a type of injunctive relief, in contrast to specifying the kinds of money damages that he seeks. (*See id.*)
   On the 'Other' relief line of his form complaint, McKiver writes that he wants the court to "[a]ssign a case worker to assist [him]." (*Id.*) The court construes that as a motion for court-appointed counsel, but will deny his request because this case does not "present[] exceptional circumstances," *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. S.D. Iowa*, 490 U.S. 296 (1989), that justify abandoning the general rule that the court lacks the power to appoint counsel in civil cases, *see Mallard*, 490 U.S. at 301–02.

reviewing a complaint under this statute, the court must accept all well-pleaded factual allegations as true and view the complaint in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

McKiver is proceeding *pro se*, so his "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (cleaned up). But his complaint still must state a right to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Moreover, "this liberal construction does not require the court to ignore clear defects in pleading or to conjure up questions never squarely presented in the complaint." *Jefferies v. UNC Reg'l Physicians Pediatrics*, 320 F. Supp. 3d 757, 760 (M.D.N.C. 2018) (cleaned up).

### III. ANALYSIS

At the outset, the court notes that in finding that some claims survive the IFP screening, it makes no judgment on those claims' merits beyond the court's initial screen, including on subsequent review under Federal Rule of Civil Procedure 12(b)(6), if appropriate. With that said, the majority of McKiver's claims must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

**A.    Civil Rights Claims**

Of McKiver's numerous claims, approximately half seek to vindicate alleged violations of his constitutional rights by non-federal actors. Construing his complaint liberally, the court

considers those claims as brought under 42 U.S.C. § 1983. *See Meredith v. Deeds*, 643 F. App'x 305, 305 (4th Cir. 2016).[4] To properly state his Section 1983 claims, McKiver must allege three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Warner v. Centra Health Inc.*, 503 F. Supp. 3d 479, 491 (W.D. Va. 2020) (citation omitted). These elements must be alleged as to each Defendant, because Section 1983 liability is "personal, based upon each defendant's own constitutional violations." *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

### 1. Law Enforcement Defendants

McKiver's claims against Roanoke County survive the court's screening, but the facts alleged are insufficient to state any of the other claims brought against the Law Enforcement Defendants under 42 U.S.C. § 1983. All other claims against those defendants, then, will be dismissed.

#### i. Officers Jane Doe and Ireland

McKiver's five federal claims against Officers Jane Doe and Ireland are identical.[5] At their core, each claim is based on McKiver's belief that he had a constitutional right to receive help from the police officers during his mental health crises. By ignoring or not doing enough to help him during those episodes, McKiver claims the officers violated his constitutional rights.

---

[4] Bolstering this construction is the fact that his complaint was filed via a form "Complaint under Civil Rights Act 42 U.S.C. § 1983." *See Harris v. Ryant*, No. 7:18-cv-0716, 2018 WL 7825495, at *2 (D.S.C. May 3, 2018), *R&R adopted*, 2019 WL 926419 (D.S.C. Feb. 26, 2019).

[5] They are: (1) "14th amendment to equal protection;" (2) "constitutional deprivation;" (3) "14th Deliberate indifference;" (4) "Deliberate indifference to medical needs;" and (5) "failure to follow county policy for mental health." (Compl. at 16, 17).

"The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). Accordingly, courts generally "reject[] liability under 42 U.S.C. § 1983 based on an affirmative duty theory." *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995).

There are two exceptions to that general rule: (1) the "state-created danger doctrine," and (2) the "special relationship exception." *Callahan v. N.C. Dep't of Public Safety*, 18 F.4th 142, 146, 146 n.4 (4th Cir. 2021). McKiver's complaint is devoid of facts that would trigger either exception and, in so doing, supplant this general rule. As to Officer Jane Doe, her lone alleged transgression was inaction; McKiver only accuses her of refusing to help him during an alleged mental health episode. Even if true, such inaction does not state a claim for a constitutional violation. *See Doe v. Rosa*, 795 F.3d 429, 440–41 (4th Cir. 2015) ("No constitutional liability exists where the State actors had no hand in creating the danger but simply stood by and did nothing when suspicious circumstances dictated a more active role for them.") (cleaned up).

Though Officer Ireland's alleged role is more involved, the complaint similarly lacks allegations that would establish a constitutional violation. McKiver alleges that Ireland agreed to help him and drove "around for 30 minutes" while McKiver was "pleading to be taken to a [h]ospital," apparently "cutting the computer off" several times on the drive.[6] (Compl. at

---

[6] The complaint suggests Ireland improperly drove around for 30 minutes before dropping McKiver off at the hospital. But 30 minutes appears to be a reasonable time for an individual to drive from 3739 Challenger Avenue in Roanoke, where Officer Ireland picked up McKiver (Compl. Ex. 1 at 1 [ECF No. 1-1]), to LewisGale Medical Center in Salem. Though the exact route taken is not in the record, the court used Google maps to calculate the distance between where McKiver was picked up and LewisGale, and potential routes via the site's "Directions" tool. *See, e.g., Feminist Majority Found. v. Hurley*, 911 F.3d 674, 711 n.5 (4th Cir. 2018) (Agee, J.,

- 7 -

17.) While someone *in custody* experiencing a mental health crisis may trigger an obligation to assist, a police officer driving an individual in need to the hospital for medical care "is not the sort of custody necessary to trigger the special relationship exception." *Sanders v. City of Phila.*, 513 F. Supp. 2d 439, 446 (E.D. Pa. 2007). That conclusion is bolstered by the fact that McKiver was at the hospital voluntarily, as well as his lamentation that Officer Ireland "left the plaintiff in a state of terror . . . without explaining to the [h]ospital staff [McKiver's] extreme state." (Compl. at 18.) If nothing else, McKiver's complaint makes clear that he wanted to be at a hospital. *Cf. Monahan v. Dorchester Counseling Ctr.*, 961 F.2d 987, 991 (1st Cir. 1992) (noting voluntary committal at a hospital does not create a special relationship). And though McKiver implies he *perhaps wanted* Ireland to take on a more custodial role, his allegations are insufficient to suggest, let alone establish, that he was in custody.

McKiver's claim that the officers failed to follow county policy for treating mental health patients similarly cannot stand as an independent basis for his civil rights claims. "[F]ailure to follow policies or procedures is not a sufficient basis to impose liability via § 1983." *Adkins v. Robinson*, No. 7:15-cv-00139, 2016 WL 47884, at *3 (W.D. Va. Jan. 4, 2016); *see also Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990).

McKiver's allegations fail to state a claim that either Officer Jane Doe or Officer Ireland violated McKiver's constitutional rights because they had no affirmative duty to help him. Therefore, McKiver's Section 1983 claims against the individual officers will be dismissed.

---

concurring) (relying on Google maps and its "Distance Measurement Tool"). The total distance there was just over 10 miles, depending on the route taken, and the estimated time for each route was at least 25 minutes. *See Lee v. Hanjin Intermodal Am. Inc.*, No. 16-cv-08610, 2021 WL 534661, at *8 n.4 (N.D. Ill. Feb. 12, 2021) ("The court can take judicial notice of locations, approximate distances, and transit times from Google Maps.").

### ii.    Roanoke County and its Police Chief Michael Poindexter

McKiver brings two Section 1983 claims against Roanoke County and the Roanoke County Police Department Chief, Michael Poindexter. The first asserts that they "hav[e] a custom of treating mental health patients in a manner as to violate 14th amendment to due process and equal protection," while the second alleges a failure to train police officers to properly deal with mental health. (Compl. at 31.) These claims apparently stem from the 911 operator telling McKiver that "they ha[ve] a tendency of 'dumping things like this on us.'" (*Id.*)

Both claims will survive the court's initial screening as to Roanoke County. But the claims must be dismissed as to Poindexter. The chief's name appears only once in the lengthy complaint as a party against whom McKiver seeks to hold liable for the alleged constitutional violations above, ostensibly because of his role as the Roanoke County Police Chief.[7] McKiver fails to allege any personal involvement or any facts to support a supervisory liability theory. *See Duncan v. Lee*, No. 7:20-cv-00554, 2020 WL 6875038, at \*1, \*1 n.2 (W.D. Va. Nov. 23, 2020) (dismissing claims as to a jail superintendent for the same reasons). Without such allegations, a plaintiff fails to state a claim because "the doctrine of respondeat superior is not a basis for liability under 42 U.S.C. § 1983." *Edwards v. Oberndorf*, 309 F. Supp. 2d 780, 785 (E.D. Va. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978)).

---

[7] To the extent McKiver's complaint can be construed as alleging a *Monell* claim against Poindexter in his official capacity as the chief of Roanoke County Police Department, the police chief is not amenable to suit in either his personal or official capacity. An official capacity suit seeks to hold the entity for which a public servant works liable. *See Kentucky v. Graham*, 473 U.S. 159, 170 (1985). By suing Poindexter in his official capacity here, McKiver seeks to hold the Roanoke County Police Department liable. In Virginia, "federal district courts have routinely dismissed claims against police departments . . . , holding that they lack the capacity to be sued." *Lester v. Nimmo*, No. 7:23-cv-00039, 2023 WL 2757011, at \*2 (W.D. Va. Mar. 31, 2023) (cleaned up); *Hearn v. Hudson*, 549 F. Supp. 949, 952 n.1 (W.D. Va. 1982) (holding Virginia law does not permit a county's police department to be sued separately from the county itself).

**2.     Hospital Defendants**

Next, McKiver alleges that LewisGale and four of its employees—a doctor, two nurses, and a security guard—violated his constitutional rights by failing to provide him the medical care he needed on the nights of December 20 and 22, 2022. Regardless of whether the complaint alleges conduct violating the constitution against the Hospital Defendants, their conduct is not covered by 42 U.S.C. § 1983.[8]

"[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (cleaned up) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). In other words, a plaintiff fails to state a Section 1983 claim against defendants who are solely private actors. *See West v. Atkins*, 487 U.S. 42, 46 (1988).

That general rule notwithstanding, an otherwise private individual or entity may be liable for a constitutional violation if their conduct can be classified as "state action." *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question as the state-action inquiry: is the alleged infringement of federal rights fairly attributable to the State?" *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 190 (4th Cir. 2022) (cleaned up). The court looks to the totality of the circumstances in deciding if a private actor's conduct is fairly attributable to the state. *See Philips*, 572 F.3d at 184. The court may find that private action is actionable under Section 1983 "if, though only if, there is such a close nexus

---

[8] The court takes judicial notice that LewisGale is a private hospital. *See* https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=403306&source=FromEntityResult&isSeries%20=%20false (last accessed February 20, 2024).

between the State and the challenged action that seemingly private behavior may fairly be treated as that of the State itself." *Id.* (internal quotations omitted).

As recognized by one district court during its own Section 1915(e)(2)(B) screen, "[p]rivate hospitals, doctors, and nurses are not generally considered state actors amenable to suit under § 1983." *Webster v. Canyon View Hosp.*, No. 1:22-cv-00047, 2022 WL 1912077, at *2 (D. Idaho June 3, 2022); *see also Philips*, 572 F.3d at 186 (holding a private hospital was not amenable to suit under Section 1983). As pleaded, the complaint lacks any indicia that the Hospital Defendants were engaged in state action. McKiver's complaint establishes that he was at the hospital voluntarily, not in the custody of the city or state. But even if he were there involuntarily, that fact alone would not *ipso facto* impute state action to the private hospital or its employees. *See S.P. v. City of Takoma Park*, 134 F.3d 260, 269–70 (4th Cir. 1998).

Although private security guards may have a closer nexus to state action than a hospital and its doctors or nurses by virtue of their occupation, a plaintiff must still allege that the individual guard "was acting as an instrument or agent of the state under color of state law." *Rose v. Central Health, Inc.*, No. 6:17-cv-00012, 2017 WL 3392494, at *13 (W.D. Va. Aug. 7, 2017). As applied to a private security guard, the court must consider: "(1) whether the Government knew of and acquiesced in the private individual's challenged conduct; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation." *United States v. Day*, 591 F.3d 679, 683 (4th Cir. 2010) (cleaned up). McKiver's complaint alleges nothing to suggest the government knew of the conduct of LewisGale's security or that its security guard intended to assist law enforcement. On the facts alleged, the court has no basis to assume LewisGale's security guard was anything more than

a private individual, so McKiver's allegations against the security guard fail to state a Section 1983 claim. *See Warner*, 503 F. Supp. 3d at 494; *see also Allen v. Deel*, No. 4:20-cv-00038, 2020 WL 6414679, at *3 (W.D. Va. Nov. 2, 2020) (dismissing the plaintiff's Section 1983 claim against a private security guard where the plaintiff failed to allege state action).

**B.     EMTALA Claims**

McKiver brings two claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. McKiver first alleges that Dr. Mosby committed a "violation of EMTALA" (*Id.* at 23). EMTALA does not create a private cause of action against individual physicians, so that claim fails. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 876–77 (4th Cir. 1992).

Next, McKiver alleges that LewisGale "fail[ed] to regulate a policy assuring EMTALA is not violated, or if violated, persons reprimanded." (Compl. at 29.) EMTALA requires hospitals to provide (1) "a medical screening examination" and (2) "stabilizing treatment to any person who seeks care in a hospital emergency room." *Va. Hosp. & Healthcare*, No. 20-2176, 2022 WL 604049, at *2 (4th Cir. Mar. 1, 2022). If a hospital fails to comply with either requirement, an individual who has been harmed by that violation may bring a cause of action against the hospital. *See Sorbara v. Carilion Rockbridge Comm. Hosp.*, No. 7:23-cv-00078, 2023 WL 5534186, at *3 (W.D. Va. Aug. 28, 2023) (citing 42 U.S.C. § 1395dd(d)(2)(A)). McKiver has not alleged a violation of one of EMTALA's two requirements; he claims instead that LewisGale did not have a policy to ensure compliance with EMTALA. That allegation does not state a claim under EMTALA, because his complaint, fairly read, does not allege that he was ever denied medical screening or stabilizing treatment. The lack of a policy to take

disciplinary action against those who fail to abide by the mandates of EMTALA—if true—simply is not violative of the terms of the statute.[9]

### C. Virginia Constitutional Claims

McKiver brings several claims alleging violations of Virginia's Constitution. Specifically, he alleges that each non-entity Defendant violated his rights under sections 1 and 11 of Virginia's Bill of Rights.[10]

"In order to enforce a private right of action under the Virginia Constitution, the provision in question must be self-executing." *Doe v. Rectors & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 728 (E.D. Va. 2015) (citing *Robb v. Shockoe Slip Found.*, 324 S.E.2d 674, 676 (Va. 1985)). The court's screening of these claims, therefore, turns on whether the relevant constitutional provisions are self-executing. *See Delk v. Moran*, No. 7:16-cv-00554, 2019 WL 1370880, at *4 (W.D. Va. Mar. 29, 2019). Article I, Section 1 in not self-executing because "it merely recites principles, [and] provides no 'rules by means of which those principles may be given the force of law.'" *Gray v. Rhoads*, 2001 WL 34037320, at *5 (Va. Cir. 2001). Meanwhile, Article I, Section 11 "is self-executing only in the context of claims of damages to or takings of property." *Delk*, 2019 WL 1370880, at *4 (cleaned up).

---

[9] The court has given McKiver's complaint the most lenient interpretation it can, but it cannot reach the conclusion that his allegations state a claim under EMTALA. While pro se litigants like McKiver cannot "be expected to frame legal issues with the clarity and precision . . . , neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985)

[10] McKiver's complaint is mostly consistent, alleging violations of both the 1st and 11th sections of Virginia's Bill of Rights. But in listing his claims against Dr. Mosby and the nurses, McKiver asserts a violation of his right to pursue safety under the first section, as well as "violation of persons with mental [d]isability" and "Violation of person with [d]isability." (Compl. at 21, 23.) The court construes the latter two claims as alleged violations of the 11th section of Virginia's Bill of Rights, consistent with the rest of his complaint.

Here, McKiver's "claims do not implicate damages to or takings of property," so he does not state a cognizable claim under Section 11. *Id.* Because his claims are not recognized under Virginia law, each of McKiver's claims asserting violations of the Virginia Constitution must be dismissed.

### D. Virginia Statutory Violations

Much like Virginia's Constitution does not generally confer private rights of action, a private citizen cannot sue for violations of a statute unless the General Assembly expressly permits it. *See Cherrie v. Va. Health Servs., Inc.*, 787 S.E.2d 855, 858 (Va. 2016) ("When a statute is silent, however, we have no authority to infer a statutory private right of action without demonstrable evidence that the statutory scheme necessarily implies it."). McKiver brings claims against LewisGale for an alleged violation of Va. Code Ann. § 32.1-127 (Compl. at 29), and against the hospital's security guard for an alleged violation of Va. Code Ann. § 15.2-1731 (*id.* at 19). But he does not show where these otherwise silent statutes give him a private cause of action. As the Supreme Court of Virginia stated, it "would never infer a private right of action based solely on a bare allegation of a statutory violation." *Cherrie*, 787 S.E.2d at 858 (cleaned up). These allegations, therefore, fail to state a claim and must be dismissed.

### E. Tort Claims

McKiver also brings several Virginia tort claims.[11] First, he brings IIED claims against Officer Jane Doe, Officer Ireland, Dr. Mosby, Nurses Lawson and Burton, and John Lewis. McKiver's basis for his IIED claim against Officer Jane Doe appears to be simply that she did

---

[11] At times, McKiver characterizes his intentional infliction of emotional distress ("IIED") claims as federal rather than state. Of course, IIED is a state tort claim. Construing his complaint liberally, the court considers all IIED claims as brought under state law.

not help him, allegedly in contravention of Roanoke County Police Department policy. (Compl. at 16.) The court's review of the county's policies attached to the complaint suggests they are guidelines, and even if the officer violated her department's policy, her conduct as pleaded was lawful. (*See* Compl. Ex. 4 at 48 [ECF No. 1-1].) "Virginia courts have . . . summarily[] dismissed intentional infliction of emotional distress claims arising out of lawful conduct by law enforcement officers." *McPhearson v. Anderson*, 874 F. Supp. 2d 573, 584 (E.D. Va. 2012). For that reason, McKiver's IIED claim against Officer Jane Doe will be dismissed. The other IIED claims survive the court's initial screening.

McKiver next brings medical negligence and medical malpractice claims against Dr. Mosby and the nurses, along with a medical malpractice claim against Dr. Mosby. These claims also survive the court's initial screening. *See Keitz*, 510 F App'x at 256.

**F.    Miscellaneous Claims**

McKiver brings a few additional claims, purportedly under state law: (1) filing a false, inaccurate police report against Officer Ireland (Compl. at 17), and (2) falsifying medical records against Dr. Mosby (Compl. at 23). Because he provides no source of an independent Virginia private cause of action supporting these claims, they will also be dismissed.

Though not separately listed with the rest of his claims against security guard Lewis, the court gleans an additional claim from McKiver's factual allegations against the security guard. McKiver implies that Lewis violated "59 V. App 833 of VA Code." (Compl. at 20.) That citation—and the language of the "Code" to which McKiver refers—is a pinpoint citation to a 2012 Virginia Court of Appeals opinion. *See Burke v. Catawba Hosp.*, 59 Va. App. 828, 833 (Va. App. 2012). The language upon which McKiver relies comes from a Virginia

hospital's internal grievance policy and is not a Virginia Code. Citing no cause of action, this allegation fails to state a claim.

## IV. CONCLUSION

The court will grant McKiver's motion to file his complaint *in forma pauperis*, but in so doing is obligated to dismiss most of his claims. In summary, the following claims survive the court's initial IFP screening:

1. 42 U.S.C. §1983 claims against Roanoke County;

2. IIED claims against Officer Ireland, Dr. Mosby, Alexis Lawson, Sara Burtner, and John Lewis;

3. Medical malpractice claim against Dr. Mosby; and

4. Medical negligence claims against Dr. Mosby, Alexis Lawson, and Sara Burtner.

All other claims will be dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B).

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to Mr. McKiver.

**ENTERED** this 20th day of February, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE