CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
6/24/2024
LAURA A. AUSTIN, CLERK
BY: s/ Christel Kemp
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARANTO MCKIVER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:23-cv-00548 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| JACOB M. IRELAND, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |        United States District Judge |
| Defendants. ) | |

Plaintiff Maranto McKiver ("McKiver"), proceeding *pro se* and *in forma pauperis* ("IFP"), brought suit against nine defendants, alleging numerous claims stemming from a purported mental health crisis and resulting hospitalization. Only the following claims, however, survived the court's required IFP screen under 28 U.S.C. § 1915: two federal civil rights claims against Roanoke County and a variety of state law claims against Officer Jacob M. Ireland (together with Roanoke County, "County Defendants"), Nurses Sara Burtner and Alexis Lawson (collectively, "Nurse Defendants"), Dr. Chad W. Mosby, and Security Guard John Lewis.

This matter is now before the court on motions to dismiss filed by the County Defendants and the Nurse Defendants.[1] For the reasons below, McKiver fails to state a claim against Roanoke County. And because the court will decline to exercise supplemental jurisdiction over the remaining state law claims, the remainder of McKiver's complaint will be

---

[1] County Defendants' motions to dismiss have been fully briefed, and because oral argument would not aid in the decisional process, are ripe for review. While the Nurse Defendants' motion to dismiss has not been fully briefed, the court will address that motion concurrently because it is resolved on discretionary supplemental jurisdiction grounds. *See Aliff v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 2:15-cv-13513, 2016 WL 5419444, at *11 (S.D.W. Va. Sept. 26, 2016) (citing *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010)).

dismissed in its entirety.

## I. BACKGROUND

The following facts are taken from McKiver's complaint and attendant exhibits and, at this stage, are presumed true.[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This lawsuit emerges from two of McKiver's apparent mental health crises. On December 20, 2022, McKiver requested an ambulance from Roanoke City, which took him to LewisGale Medical Center ("LewisGale"), but he left LewisGale before being treated. (Compl. ¶¶ 1–7. [ECF No. 1].) Two days later, McKiver requested a police check for his second mental health crisis. (*Id.* ¶ 10.) When an unnamed officer responded to the call, McKiver asked her to take him to the hospital, but she declined and left. (*Id.*)

McKiver then called 911 again for help and spoke to an operator.[3] (*Id.* ¶¶ 11–13.) He called from an address in Roanoke County, stating that "a gun was pulled" on him several times. (911 Call at 0:42.) Roanoke City initially received his call but transferred it to Roanoke County. (ECF No. 24-1 at 3.) When asked where the gun was pulled on him, McKiver stated that it happened "a couple blocks away." (*Id.* at 01:05.) Because McKiver called from a location

---

[2] The court limits its recitation of the facts to the defendants who are moving for dismissal. A more detailed factual background can be found in the court's prior opinion. (*See* Mem. Op. at 1–4, Feb. 20, 2024 [ECF No. 12].)

[3] McKiver attached a partial transcript—three of six pages—of the 911 call to his Complaint. (*See* Compl. Ex. 1 [ECF No. 1-1].) In support of its motion to dismiss, Roanoke County submitted a disk containing the full audio recording of the call. (Roanoke Cnty. Br. Supp. Mot. Dismiss Ex. 2 [hereinafter "911 Call"].) In his response, McKiver provided the full transcript of the 911 call. (Br. Opp'n Roanoke Cnty. Mot. Dismiss Ex. 1 [ECF No. 30-1] [hereinafter 911 Call Transcript].) Because portions of the 911 call are attached to the Complaint, the Complaint incorporates the call, and McKiver relies on the call as the basis for his claims against Roanoke County, the court will consider the call's full recording and transcript without converting the motion to dismiss into a motion for summary judgment. *See All Weather, Inc. v. Optical Sci., Inc.*, 443 F. Supp. 3d 656, 663 (D. Md. 2020) (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.2d 159, 166 (4th Cir. 2016)).

near the borders of Roanoke City, Roanoke County, and Bedford County, those "couple blocks" were of important jurisdictional value—dispatch stated, "if there was a gun pulled on [McKiver] in the city, they're going to have to handle" the call. (*Id.* at 01:19–01:34.) McKiver asked to be transferred from Roanoke County dispatch to Roanoke City, but before doing so, the 911 operator tried to get more information about where exactly the underlying incident occurred. (*Id.* at 01:42.) McKiver could not remember the details aside from recalling that the gun was pulled on him at a "local convenience store." (*Id.* at 01:55.) The dispatch operator then informed McKiver, "the problem is . . . I got to have an actual location before I can just send you off to the city because they like to dump . . . things like this on us." (*Id.* at 02:21.)

McKiver could not remember the actual location but requested to be taken to the hospital because he was "mentally unstable." (*Id.* at 03:19.) In response, the operator asked for McKiver's personal and physical information, agreed to send help to his location, and told him to sit tight until that help arrived. (*Id.* at 03:52–05:54.)

Officer Ireland arrived at the scene and agreed to take McKiver to the hospital. (Compl. ¶¶ 14–19.) McKiver alleges, however, that Ireland first drove him around for 30 minutes while he "plead[ed] to be taken to a [h]ospital." (*Id.* ¶ 18.) McKiver also alleges that Ireland improperly turned off his computer several times during the drive, placing McKiver in a state of terror. (*Id.* at 17.) The pair eventually arrived at LewisGale, where Ireland escorted McKiver inside and turned him over to hospital staff before leaving. (*Id.* ¶¶ 19–23.)

The Nurse Defendants subsequently examined McKiver. (*Id.* ¶ 24.) During that examination, one nurse—Lawson—allegedly became upset, left the room, and startled McKiver by making loud noises. (*Id.*) McKiver claims he was then left unattended in a hallway

while nurses laughed at him, before the other nurse—Burtner—told him to wait in a room by himself. (*Id.* ¶¶ 27–28.) After a turbulent remainder of his stay at LewisGale and his flight from the hospital, McKiver was arrested. (*See id.* ¶¶ 24–51.)

McKiver filed suit on August 14, 2023, bringing a panoply of civil rights and state law claims against essentially all individuals or entities he encountered during his mental health crisis. Because he filed his suit *in forma pauperis* under 28 U.S.C. § 1915, the court exercised its mandatory screening duty and dismissed much of his complaint under § 1915(e)(2)(B). (*See* Order, Feb. 20, 2024 [ECF No. 13].) The following claims survived the court's screening:

1. 42 U.S.C. § 1983 claims against Roanoke County;

2. Intentional infliction of emotional distress claims against Officer Ireland, Dr. Mosby, Lawson, Burtner, and Lewis;

3. Medical malpractice claim against Dr. Mosby; and

4. Medical negligence claims against Dr. Mosby, Lawson, and Burtner.

(*Id.*) Accordingly, the court directed the Clerk to effect service on the remaining defendants. (ECF No. 14.) After waiving service, County Defendants each filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that McKiver's complaint fails to state a claim against them. (ECF Nos. 17–18, 21, 23.) Nurse Defendants separately moved to dismiss the claims against them for lack of subject matter jurisdiction and for failure to state a claim, under Rules 12(b)(1) and 12(b)(6). (ECF No. 39.)

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

McKiver is proceeding *pro se*, so his "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (cleaned up). But "this liberal construction does not require the court to ignore clear defects in pleading or to conjure up questions never squarely presented in the complaint." *Jefferies v. UNC Reg'l Physicians Pediatrics*, 320 F. Supp. 3d 757, 760 (M.D.N.C. 2018) (cleaned up). To survive dismissal, his complaint still must state a right to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

Roanoke County argues that the 42 U.S.C. § 1983 claims brought against it are legally deficient because—as McKiver correctly acknowledges in his complaint (Compl. at 31)—the law typically does not hold a municipality liable for its employees' wrongful acts. *See Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 469–70 (4th Cir. 2013) ("[M]unicipal liability under Section 1983 does not amount to respondeat superior."). Because McKiver's claims against Roanoke County attempt to do just that, they must be dismissed. And since that finding divests

the court of original jurisdiction, it will not exercise supplemental jurisdiction over the remaining state law claims.

## A. Roanoke County's Motion to Dismiss

The court construes McKiver's complaint as bringing two claims under 42 U.S.C. § 1983 against Roanoke County. Specifically, McKiver alleges Roanoke County, acting through various employees on December 22, 2022, violated his constitutional rights to due process and equal protection by (1) "[h]aving a custom of treating mental health patients in" an unconstitutional manner, and (2) failing to properly train its police officers in "dealing with mental health." (Compl. at 31; Br. Opp'n Roanoke Cnty. Mot. Dismiss at 1–2.)

Local governments generally cannot be held civilly liable for their employees' unconstitutional actions; they are "responsible only for their own illegal acts." *Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023) (cleaned up). As such, for his Section 1983 claims against Roanoke County to survive, McKiver's complaint must plausibly state facts to support a theory of liability under "the stringent test" of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Collinson v. Gott*, 895 F.2d 994, 1004 (4th Cir. 1990) (Phillips, J., concurring). "*Monell* permits suits against a municipality for a federal constitutional deprivation only when the municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'" *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 532–33 (4th Cir. 2022) (quoting *Monell*, 436 U.S. at 690–91). The requisite policy or custom can arise in one of four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference

>to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

### 1. Custom or Policy

McKiver's first claim alleges that Roanoke County had a "custom of treating mental health patients in a manner" violative of the constitution, so the court analyzes its viability under *Lytle*'s fourth prong. (Compl. at 31.)

"To prove a custom or practice using the fourth method, [McKiver] must show that a 'pattern of comparable practices has become actually or constructively known to responsible policymakers.'" *Howard*, 68 F.4th at 952 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)). "Prevailing under such a theory is no easy task . . . because sporadic or isolated violations of rights will not give rise to *Monell* liability; only widespread or flagrant violations will." *Id.* at 953 (cleaned up).

McKiver's claim on this front rests entirely on the Roanoke County 911 operator's statement that Roanoke City "like[d] to dump . . . things like this on us."[4] (Compl. at 31.)

---

[4] Much of Roanoke County's motion to dismiss focuses on the 911 operator making this comment in the context of trying to find out where exactly McKiver had a gun pulled on him, because he was near three different jurisdictions, and not related to his mental health crisis. Common sense supports Roanoke County's interpretation, particularly given that McKiver first told the operator that he was having a "mental health emergency" about a minute after the operator made the statement at issue. *Cf Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). But in his opposition brief, McKiver clarifies his argument—that the 911 operator knew or should have known that McKiver had mental health issues based on his tone and inability to "hold a rational conversation." (Br. Opp'n Roanoke Cnty. Mot. Dismiss at 3.) That argument suggests that there is, at minimum, some dispute as to whether the 911 operator knew McKiver was going through a mental health crisis at the time, so the court assumes he did for purposes of this motion. *See Twombly*, 550 U.S. at 555 (noting the court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)").

According to McKiver, that statement imputes a custom to Roanoke County of poorly treating individuals in mental health crises. (*Id.*) Unlike his well-pleaded facts, the court cannot take that legal conclusion at face value. *Iqbal*, 556 U.S. at 678. And a complaint that provides only "a formulaic recitation of the elements of a cause of action," instead of discrete facts to support that claim, will not survive a 12(b)(6) motion to dismiss. *Id.*

Even assuming McKiver properly alleges that the 911 operator's response was improper to the point of a constitutional violation, he pleads no additional facts that could support his weighty accusation that Roanoke County employees customarily and constitutionally failed in a similar manner. "It is well settled that isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes. Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice." *Lytle*, 326 F.3d at 473 (cleaned up). Because McKiver's complaint falls well short of providing facts to support his legal conclusion that Roanoke County had an unconstitutional custom, his claim cannot survive on that ground.

To the extent the operator's statement could be construed as supporting an "express policy" theory of *Monell* liability, McKiver fails to state a claim on that basis as well. To survive dismissal under that theory of liability, McKiver "must point to an 'express policy,' that is, 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" *Howard*, 68 F.4th at 952 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). An express policy generally exists, as *Lytle* contemplates, as a "written ordinance or regulation." 326 F.3d at 471.

"[W]here there is no official statement respecting specific police conduct, it will be difficult if not impossible to imply an official municipal policy directly authorizing conduct at odds with federal and state constitutions and laws." *Spell*, 824 F.2d at 1388. And of course, if a plaintiff can identify an express policy, he must also show it "was an express policy of the [municipality]," not an unofficial policy of certain employees or departments. *Howard*, 68 F.4th at 953.

An express policy claim must be dismissed when the complaint "do[es] not establish, beyond the speculative level, that the [municipality] promulgated an express policy that caused the [defendant] to violate Plaintiff's constitutional rights." *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 532 (E.D. Va. 2015). The 911 operator's statement to McKiver—"the problem is . . . I got to have an actual location before I can just send you off to the city because they like to dump . . . things like this on us" (911 Call at 02:21)—does not impute an express unconstitutional policy to Roanoke County. If anything, the 911 operator stated that any questionable policy belonged to Roanoke City, a neighboring jurisdiction. Indeed, the only time McKiver identifies a Roanoke County policy is in his opposition brief, where he cites to a newspaper clipping discussing Roanoke County's policy of responding to individuals with mental health emergencies. (*See* Br. Opp'n Roanoke Cnty. Mot. Dismiss at 5.) McKiver cites to that policy favorably, but asserts the 911 dispatch operator did not adhere to it. (*Id.*) In other words, McKiver appears to acknowledge the existence of a virtuous Roanoke County policy but asserts that a county employee did not follow that policy. That is not enough to state a claim under the express-policy theory of *Monell* liability. *See Spell*, 824 F.2d at 1388; *Monell*, 436 U.S. at 691. Overall, McKiver "failed to allege sufficient factual matter to establish

beyond a speculative level that any deprivation of [his] rights was attributable to an express policy of [Roanoke County]," so the court will dismiss his first claim. *Moody*, 93 F. Supp. 3d at 531.

## 2. Failure to Train

McKiver's second Section 1983 claim against Roanoke County asserts a "failure to train police officers to properly deal with mental health." (Compl. at 31; Br. Opp'n Roanoke Cnty. Mot. Dismiss at 1–2.)

Failure to train is a narrow path to *Monell* liability. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To state a claim against Roanoke County on this ground, McKiver must allege that "(1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014) (cleaned up).

McKiver's failure to train claim fails at the first element because he does not allege a constitutional violation by any police officer who interacted with him on December 22, 2022. As the court explained in its *sua sponte* dismissal of McKiver's Section 1983 claims against the individual officers,

> "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). Accordingly, courts generally "reject[] liability under 42 U.S.C. § 1983 based on an affirmative duty theory." *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995).

(Mem. Op., Feb. 20, 2024, at 7.) Because McKiver's complaint fails to allege any exception to that general rule, the court previously found he failed to state a claim for due process violation against the individual police officers. (*See id.* at 7–8.) Having failed to allege claims to support a constitutional violation by Roanoke County's police officers, McKiver's failure to train claim must be dismissed.

## B.  Remaining Claims

As the Nurse Defendants argue, the court dismissing McKiver's civil rights claim against Roanoke County suggests it should also dismiss the remainder of his claims—intentional infliction of emotional distress, medical malpractice, and medical negligence—that are predicated on state law. The court agrees. Having dismissed the Section 1983 claims, which were the lone remaining claims that gave the court original jurisdiction, the court declines to exercise supplemental jurisdiction over McKiver's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Shanaghan v. Cahill*, 58 F.3d 106, 109–10 (4th Cir. 1995).

## IV.  Conclusion

For these reasons, the court will grant Roanoke County's motion to dismiss, and dismiss the rest of McKiver's state-law claims without prejudice. Officer Ireland and the Nurse Defendants' motions to dismiss will accordingly be denied as moot.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to Plaintiff and all counsel of record.

**ENTERED** this 21st day of June, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE